ARCADY FARMS MILLING COMPANY, a corporation of the State of Illinois, v. EAGLE POULTRY PACKERS, Inc., a corporation of the State of Delaware.

(*March* 28, 1950.)

TERRY, J., sitting.

*Daniel J. Layton, Sr.,* and *James R. Morford* (of Morford, Bennethum, Marvel and Cooch) for the plaintiff.

*James M. Tunnell, Jr.,* (of Tunnell and Tunnell) and *Clair J. Killoran* (of Killoran and Van Brunt) for the defendant.

Superior Court for New Castle County, No. 1003, Civil Action, 1948.

TERRY, J.

The plaintiff, an Illinois corporation, is engaged in the business of the manufacture, sale and distribution of mixed feeds for poultry.

The defendant, a Delaware corporation, is engaged in the business of buying poultry which has been raised by various poultry growers on the Delmarva Penninsula, thereafter catching, cooping and transporting the same to its plant at Frankford, Delaware, then putting the poultry through a course of intensive feeding prior to slaughtering, dressing and marketing same.

On April 1, 1948 the defendant contracted to purchase from the plaintiff 300 tons of chicken feed known in the trade as "Wonder Feed Pellets" or sometimes called "Station Pellets" at the price of $96.90 per ton, said feed to be delivered within thirty days upon order of the defendant. The type of pellets contracted for are used in the poultry industry to fatten the flocks in batteries prior to slaughtering, and it was for this purpose that the foregoing sale was consummated.

In relation to the 300 tons contracted for, 150 tons were delivered and accepted. The remainder, or 150 tons, was delivered but acceptance was refused. The first delivery was of 30 tons, for which the defendant paid the contract price. In relation to this feed the defendant says it was used as intended, and, as a consequence, the poultry lost weight, resulting in damage to the plaintiff in an amount in excess of the contract price. As to the remaining 120 tons that were accepted, the defendant alleges the same was not fit for the purpose intended and was used as mash to stuff the poultry prior to slaughtering, a use for which feed considerably cheaper than that contracted for is used.

The complaint contains two causes of action: first, that the defendant failed to pay for the 120 tons of the 150 tons delivered

under the contract; second, that the defendant refused to accept the remaining 150 tons to be delivered under the contract.

The defendant in its answer seeks damages in way of counterclaim for the 30 tons that it accepted and paid for and subsequently used to the alleged damage to its poultry. As to the remaining 120 tons accepted, allegedly not fit for the purpose intended but used as stuffing mash, the defendant pleads recoupment in diminution of the price.

The plaintiff pursuant to Rule 12 (b) of the Rules of this Court moves to dismiss the counterclaim as the same relates to the defendant's answer, for the reason that it fails to state a claim on the part of the defendant against the plaintiff upon which relief can be granted.

The foregoing motion to dismiss is predicated on the provisions of Section 6048 of the Revised Code of Delaware, 1935, Subsection 1 and 2, which provides as follows:

"Remedies for Breach of Warranty:— (1) Where there is a breach of warranty by the seller, the buyer may, at his election:

"(a) Accept or keep the goods and set up against the seller, the breach of warranty by way of recoupment in dimunition or extinction of the price;

"(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty;

"(c) Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty;

"(d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, re-

turn them or offer to return them to the seller and recover the price or any part thereof which has been paid.

"(2) When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted."

The foregoing sections and Section 69 of the Uniform Sales Act are identical.

The plaintiff contends that the defendant by its answer admits accepting and keeping the 120 tons of feed sold and delivered to it; that it relies upon an alleged breach of warranty by the plaintiff and sets up the breach (1) by way of recoupment in diminution of the price as to the 120 tons received and used and not paid for, and, (2) as ground for rescinding the contract and refusing to accept the remaining 150 tons; that, in addition, the defendant seeks to maintain an action against the plaintiff by counterclaim for damages for the breach of warranty arising out of the receipt and use by the defendant of the first 30 tons of feed accepted and paid for.

It is contended that the remedies under Sub-paragraphs A and B of Sub-section 1 of Section 6048 are mutually exclusive, and, if recoupment is to be relied upon by the defendant under Sub-paragraph A, then counterclaim under Sub-paragraph B is not available to it. In other words, the plaintiff says that the defendant may assert one or the other of the permitted remedies but not both in litigation relating to the same contract, and that, since recoupment is contained in the answer proper and the damage claim made in an affirmative counterclaim, the counterclaim has been considered by the plaintiff for the purpose of its motion as an appendage to the primary substantive defense of recoupment in diminution of price.

The defendant concedes the general principle to be as con-

tended by the plaintiff; that is, that remedies under Section 6048 are mutually exclusive. However, the defendant contends that there exists no language in Section 6048 which prohibits the application of the separate remedies indicated under Sub-paragraphs A and B in the same action as long as both are not used in respect to the same goods.

■ Undoubtedly, the remedies under Section 6048 are mutually exclusive, but by this we do not mean that a defendant cannot interpose any true defense that he may have in reference to any particular goods purchased under a contract of sale. What we do mean as to any particular goods is that the defendant may not interpose any more than one of the defenses as indicated under Section 6048.

■ In the present case, concerning the 30 tons which were accepted, paid for and subsequently fed to the poultry resulting in alleged damages to the defendant in an amount in excess of the contract price, the defendant is relying exclusively upon counterclaim in seeking a recovery for its loss thereby occasioned. Concerning the 120 tons accepted and not used for the purpose intended, for the alleged reason that it was not fit for that purpose, the defendant has elected to proceed under recoupment in diminution of the purchase price. We do not find such procedure to be repugnant to the express provisions of Section 6048, nor contrary to the import that we give to the language therein employed.

The plaintiff's motion to dismiss the counterclaim is denied.

An order will be entered accordingly.